May it please the Court, Counsel, I'm back before you in the second case. You'll understand my view of the law, which again is that I won't go through it all again, I promise, but I do believe that we're not giving enough weight to the Oregon Supreme Court cases that specifically talk about how the accrual role works when you don't know identity. That's the TR v. Boy Scouts of America case. It's a specific standard that applies. We're supposed to apply that standard, and that is, is there enough of a chance? Well, there's no difference between this case and the other case, obviously. You know, I was curious to find out about this filing situation, which is unique to the other case. You don't have that in this particular case at all. I missed the first part. I was concerned about the filing issue. Right. We don't have that in this one. You don't have that in this case. That's correct. And I was concerned about that in respect to the other case, which is unique to that case, right? Right. So, counsel, unless you have something to add that you didn't have in the last case, perhaps we can hear from opposing counsel, and then you can ---- Thank you. I have 30 seconds to add, which is just the facts are a little bit different in the sense that we didn't, we never knew what Evraz's specific relationship is to this property. We thought that it was a sublease. That's what the declaration says for my client. So that would make Itzy a landlord and Evraz a sublease. But again, we didn't know what their responsibilities were for the asphalt, and we saw port equipment using to fix the asphalt. You didn't know which of the three was ultimately going to be responsible, or maybe even more than one would be responsible as this thing shook out during the course of litigation. Right. But I believe the question is, was there enough of a chance? You could say yes. And then we get to investigate, did we have all the facts we needed? In order to state a claim, I still believe the answer is no. We didn't have all the facts. Even if we could, you know, allege on information and belief, that's not how accrual works in Oregon. It's the same issue. It's the same issue. Same issue. Could I ask you a question about ---- it just drives me crazy that this happened. This isn't supposed to happen. The ---- weren't there initial disclosures? In the ---- in this case, I don't believe there were initial disclosures. But I will, if I'm wrong about that, I will ---- That far? You mean it's ---- Right. They immediately moved for summary judgment, and it was scheduled, and we argued it. And it was basically, look, this has already been decided. But don't initial disclosures come before? They may have even been waived. I just don't recall. That's the answer. How is it possible that you still don't know whether there's a sublease? And it just seems to ---- and in the briefing, nobody talked about initial disclosures. So it looks like it caught Judge Rawlinson's attention, and it sure caught mine. And your answer is you think you didn't get that far. I can't recall if we waived initial disclosures or not. That's my answer is I don't know. But I will say that summary judgment happened right out of the box in this case. And so we never exchanged documents or the like. And it was based mostly on the record that had been developed in the other case. All right. We'll hear from opposing counsel, and then you may rebut. Thank you. Thank you, Your Honor. Alice Mullen on behalf of EVRAS. Just to clear up a few of the factual questions that this Court had for previous counsel in the related case and in this case, as to the initial disclosures, the opposing party waived, and so we ---- he's correct, we did not get that far and immediately moved for summary judgment. Also, as a factual matter, there's been quite a bit of discussion about this language in the plaintiff's declaration is, I was aware before my injury that ICSI leased Terminal 6 from the port, and I also understood that EVRAS leased the slab yard. So on summary judgment, those are the facts in the record. They're uncontroverted. There's really no ---- No sublease? I believe so, Your Honor, or a terminal use agreement. But on this record, what we have is these factual statements from the plaintiff that he believes that there is a sublease. I understand the factual statements we've been talking about that whole morning. Yes. But I'm just trying to figure out, it's pretty clear that's what he believed, and I'm just trying to figure out if there is a sublease. You're saying there is. He says he still doesn't know. We understand that now, so I don't want to belabor it any further. Thank you, Your Honor. Thank you. So to dial in really closely on some of the issues in this case that I think are arising from terminology that's problematic. So there's been a lot of discussion about who's responsible for the instrumentality of the tort. And so our accrual rule in Oregon, as you're aware, is that there must be knowledge that would put a reasonable person in a position to be aware of a substantial possibility of the three elements, harm, causation, and tortious conduct. Harm and causation aren't at issue. Tortious conduct here, this is a common law negligence case, so our tortious conduct is going to need a duty, and it's going to need a breach. And so the duty here, yes, Your Honor? Forgive me for interrupting, but we know this well. I'm trying to figure out Gerke versus Turner. Is it your position in Turner that the clock would have started running the day she fell? In Gerke? Turner. In Turner. In Turner. In Gerke. In Gerke, yes. Gerke is the fall in the crack of the store. Would the clock have started, because the case doesn't exactly say that. And that's what I'm trying to, and that's the nub of it for me. So our position is that, yes, it would have started running immediately. And the language in Gerke is that plaintiff knew or should have known that she was wronged by the possessor of the store, and if she didn't know the legal name of that person. But she can't go, it is a bit of a conundrum, right? It's imputing knowledge to her, and the discovery rule, knew or should have known, we know this in our sleep, but it is a little peculiar because there isn't a universe, really, where somebody knows that day the name of the good faith. Rule 11 requires you to do some research. Make sure you're just not just sort of suing people. You're supposed to have a good faith belief. You've got the right one. Otherwise, we multiply litigation. We cause a lot of expense. You know, all of that. So really, Oregon requires that the clock starts running immediately? So that's the conundrum of the inherently discoverable standard in Oregon, where even though something hasn't been necessarily discovered, it is inherently discoverable, and so our clock starts running. And- Even though she can't sue that day. Even in real life, she can't sue that day. In real life, she can't, but her statute starts running. So the through line, if you look at these cases, from Gurkha through the subsequent cases, what they say about the identity of the tortfeasor, what you have to know, seems to me to comprise two critical elements. There's the one that this court was discussing with counsel earlier about the role of the tortfeasor. Is the tortfeasor the owner of the store, the driver of the car, the paver of the road? There's also the existence of a particular party. So we see that in Gurkha, this is really about the role. She knows that the party is the owner of the store. She gets the legal name wrong, but she knew about the existence of that party. That's what I'm calling the category, but she doesn't know the identity of that defendant. Right. Okay. So we see those two elements come into play in Cole, right? Where the plaintiff in Cole was kidnapped from a mall, and so she knows that the tortfeasor is responsible for her safety at the mall. But it's different. Cole's different because she had no idea that an entire other entity had subcontracted to provide security for the mall. Precisely. It's really different. Precisely, Your Honor, and that's why it is different from Gurkha, because she knows the role of the tortfeasor, but she doesn't know the existence of this particular defendant. So in a case where you understand the role of the tortfeasor and you're aware of the existence of the defendant, then your clock starts running. Yes, I think that's the part that's apparent. The difficulty is trying to reconcile Gurkha with Cole's statement and Oregon Supreme Court's more recent case law, where it's really clear they say that's not a different animal, we have the discovery rule in Oregon, newer should have known of all the elements, and we have a 2-year statute of limitations. It's entirely possible under this inevitable discovery doctrine that a plaintiff is really not going to get 2 years. In fact, that's the reading of Gurkha. So is that your position? That it can be the case where a reasonable plaintiff would have discovered this information, but our plaintiff doesn't actually discover it and the statute runs? But a period of time to find the identity always, even if it's only a week or something. You're going to get less than 2 years. Is that right? Yes. Okay. Yes. And that is why our standard is that it starts to run when a person reasonably should have known facts, which would make a reasonable person aware of that substantial possibility the element is meant. The fact of the matter is you almost never get 2 years, because you're not going to file that same day. Precisely. So you have 2 years to file, but it's not contemplated that you actually have 2 years, because that would mean you would file that same day or the next day. So our inherently discoverable cases occur when the instrumentality of the tort is immediately apparent. Slip and fall in a store, hurt your Achilles tendon in a pothole. Not when the instrumentality is complex and requires investigation. You said cases. Forgive me for interrupting. You said cases. I've got 2. So let's touch briefly on the additional authorities that were provided by a plaintiff earlier this week. Dixon v. TriMet actually discusses Turner at some length and rejects a Turner-like argument that because there were several defendants and the plaintiff in that case did appreciate that TriMet, which is our transit authority, could be liable for its employees' conduct related to a third-party tortfeasor, a person who stabbed the plaintiff. And in that case, what the court said was that an argument that the plaintiff doesn't know the full extent of the harm or that the facts that he appreciates at the time have a legal significance doesn't avail him. At the time, he knew there was a TriMet employee who opened the door and allowed this person, who was known to be dangerous, to come back on the bus and stab him. So in our case, what our plaintiff knows on the day he is injured is that, according to his declaration, he knows that Evraz is the possessor of this property. It conducts its operations there. So what's our tortious conduct? Plaintiff is essentially arguing that because we don't know that it's the possessor, he's got some permission to use, right? Well, his declaration says he knew that it subleased from ICSI, so it's the possessor, and he knew that it conducted its operations there. Yeah, but it comes back to knew about a sublease. We don't really know that. You might be the only one in the room who knows that. But at any rate, that was his belief. That was his belief. It was his understanding. Okay. He also testified that he knew that because he'd been doing work for Evraz at that slab yard for years. Right. He had a lot of knowledge about Evraz's operations there. He interacted with their documents. He testified in his deposition. So that just tells us he knew they had permission. I don't – I get that. So you can go on with your – So really what we're talking about here is the source of the duty. The plaintiff is saying that we don't have these leases, so we don't know contractually who was responsible for what. And that's that word responsible. But this is a common law negligence claim, so what we care about is not who's contractually responsible, but who under the common law has a duty to make the slab yard safe or to warn of the dangerous condition. So there are two possible paths here. There's plain vanilla common law negligence in Oregon where the duty arises from the foreseeability of an unreasonable harm, and there's also premises liability, discussed below, where the duty arises from your relationship with the slab yard – or your relationship with the premises, that you possess it. So counsel said in the previous case that Itzi, the landlord, is not always liable under Oregon law. That's because the tenant is. And on these facts, this plaintiff, on the day that he's injured, believes that Evraz is the tenant of the property. He also knows that Evraz conducts his operations there, and he went there because of paperwork that he had from Evraz. So he also knows that Evraz was told of the potholes and that they've been there for a long time, so Evraz knows or has reason to know of the unreasonably dangerous condition and that people in plaintiff's position will be going there. So under either a foreseeability standard or a premises liability standard, plaintiff knows facts that give rise to this duty, and as soon as he's hurt, he knows it's been breached. So the contractual arrangements between the parties, who is responsible contractually for filling in those potholes, is a different question from who has a duty under a common law negligence theory like the one that's brought here. Could be identification agreements. All that may be flushed out during the course of litigation, but he knew enough that one or more of those people really could and probably would be liable. That's precisely it, Your Honor, yes. I see that I'm out of time. The Fifth Court has no further questions. Thank you, counsel. Thank you. Mr. Plato. Hello. A couple of things. I'm glad that counsel brought up the Dixon case versus TriMet, which is the additional authority that I submitted to you, I believe, yesterday, possibly two days ago. And because what Dixon talks about is this point that I've been trying to make, and perhaps inartfully, which is you have to know the critical facts. It's not the case, and I think we maybe just disagree on this, Judge Block, but it's not the case that you say I'm going to sue those all three because it's possible that one of them will be liable. That's not how it works in Oregon. Oregon has a more liberal accrual standard, not stricter. The way we're applying Gherke as sort of overriding every other case makes it more strict. If you have a chance that someone is liable, you have the opportunity to look into it before the claim accrues. That is what the Oregon Supreme Court has said. So, counsel, what's the language that you're relying upon in Dixon? Because the court found that no reasonable trier of fact could conclude that he did not know of the critical facts. So what language do you find in that case that supports your argument? What I think supports my argument is that they relied on the critical facts that he knew at the time. He knew every fact that he needed to know. The only thing he didn't know was the legal significance of those facts. And so, and I will read to you. The same could be said about your client, that he knew all of the critical facts, the critical facts that he needed to know, not the nuances of those facts. It's not the nuances, Your Honor. It is the critical fact of control. That is a critical fact. And so when counsel just said there's two paths, that is incorrect. There is one path to suing someone in Oregon. It is not a general foreseeability standard. It is premises liability. And under premises liability law in Oregon, the question, the key fact is control. Who has control over the premises? That is the fact that they didn't have. And so if you look at Dixon, he goes to the facts. So you're saying that as a matter of law, the plaintiff must know who legally has control over the premises before the statute of limitations begins to run? Not legally. They have to have facts from which it could be said as a legal matter that that person has control. He doesn't have to go to a lawyer. He doesn't have to have a legal education, but he has to know the operative facts, and he does not know them. How would he know if, under your view, there has to be a determination as to what the lease contains and what all of the provisions of the lease provide? If then, why wouldn't he have to go to a lawyer? A common person wouldn't be able to decide that. That's correct. That's correct. So in essence, you're saying that he — that until he knows all of the legal relationships — I'm saying if he knows the facts from which we can — one could draw legal conclusions down the road. That's what Dixon says. But you're defining facts to mean the legal result. Who has control is a legal question based on the leases. So — Facts from which one could draw a legal conclusion down the road. That is what Dixon says. It says — and I'll just read it to you. They say — so I'm reading from page 1192 in the P3D site, about halfway down. They say, Thompson observed the critical facts as they occurred. He did not discover any new facts about TriMet or about James's conduct when he met with his attorney, nor does Thompson assert that his meeting with his attorney prompted an investigation into additional facts necessary to prove a negligence claim against TriMet. In order to prove a negligence claim against Evraz or ITSE, you have to understand their legal relationship. It's not a function of knowing, you know, how the term of the lease allocated. Dixon doesn't say that. Dixon talks about operative facts. It doesn't talk about the relationship of the bus operator to the city or any of that. It just talks about the operative facts that occurred. Right. And that was the conduct. And the bus operator. That was the conduct of the bus driver. That was all he needed to know. Here, we need to know more. It's a different legal environment. We're not talking about premises liability, Dixon. We are here. It's a busy port terminal. So Dixon doesn't help you then if it's not the same type of case? It helps me because of the legal standard that Dixon applies. That's what I'm relying on. Counsel, if we take a step back, I'm back to initial disclosures. Okay. How can it be possible that your client got the lease, right, took three months, but got the lease, sued, waived initial disclosures, right, and now says, I don't really know if there's a sublease or not, even though, you know, in light of that very peculiar fact pattern, we have his declaration saying, well, he believed there was a sublease. So why wasn't there an accrual there immediately, given that he at least believed? And it took him more than two years. Because it's what he knew at the time. So even if we got initial disclosures and found out the time, there's at least a duty to inquire. There is. And so but no one's ever challenged the length of our inquiry period here. The only argument that has been made here, and again, it's their burden, is that on the moment that he falls into that pothole, he knows, based on his belief at the time. So if we later get in discovery a lease document. But then he does nothing, even though he believed there was a sublease, and he did nothing to get it? He did do something. He went to his attorney. His attorney asked the court who's responsible. The court sent them the document that showed that Itsy was responsible, and they sued Itsy. So it's not the case that they did nothing. Well, that lease does mention Evrath. The Itsy lease does? Right. That I don't recall. And we've got him saying, I believe there was a sublease. He says, I believe there was a sublease. That's true. But that is enough of a chance to give rise to a duty to inquire. They did an inquiry. And if we're going to quibble with the length or the type of inquiry, that's not an issue in this appeal. That has never been raised. All right. Thank you, counsel. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. We'll be in recess for five minutes.
judges: Rawlinson, Christen, Block